**ALLIED BITUMENS, INC., Plaintiff,**

**v.**

**The UNITED STATES of America, Defendant.**

**Civ. No. 1969–341.**

United States District Court,
W. D. New York.

Jan. 24, 1973.

Harry R. Hayes, Albany, N. Y. (Thomas J. Fori, Albany, N. Y., of counsel), for plaintiff.

John T. Elfvin, U. S. Atty., Buffalo, N. Y. (Scott P. Crampton, Asst. Atty. Gen., Donald R. Anderson and Robert J. Hipple, Attys., Department of Justice, Washington, D. C., of counsel), for defendant.

CURTIN, District Judge.

This is an action under Title 28, United States Code, Section 1346(a)(1). The complaint alleges that the Internal Revenue Service erroneously and illegally collected from the plaintiff federal highway use taxes of $11,532, penalties of $967 and interest of $1,208.35 for the fiscal years ending June 30, 1963 through 1968. The vehicles involved are asphalt distributors and slurry machines, which are truck-like vehicles used in the construction and maintenance of highways. The sole issue is whether or not these vehicles are "highway motor vehicles" within the meaning of Title 26, United States Code, Section 4482(a) and therefore subject to the highway use tax imposed by Title 26, Section 4481 of

the Code. Presently pending are motions by both parties for summary judgment.

The facts were stipulated by the parties and are as follows: The plaintiff corporation [hereinafter Allied] has been engaged in the business of constructing and repairing roads and highways in the Buffalo, New York, area for a number of years, including the years in question in this lawsuit. The bulk of this construction business involves the resurfacing of roads and highways with liquid asphalt, either manufactured by Allied in its own asphalt plant or purchased from a larger asphalt plant in the Buffalo area. The asphalt surface is spread on the road being repaired either by an asphalt distributor, a tank-type truck, or by a slurry machine, also a truck-like vehicle.

The asphalt distributor resembles a large heavy-duty tank truck with the addition of an auxiliary engine and pumps on the rear of the truck. It consists of a truck cab and chassis upon which is mounted a heavy-duty, specially insulated tank capable of being heated by gas jets mounted beneath the tank on the truck chassis. At the rear of the truck, behind the tank, is an auxiliary engine which provides the power to drive pumps which draw the liquid asphalt out of the tanks and force it, under pressure, into the nozzles mounted on brooms at the rear of the truck, where the asphalt is then spread on the roadbed as required. The consistency and thickness of the asphalt applied on the road are determined by the heat of the mixture in the tank, the rate of application which is adjusted by special calibrated instruments on the rear of the truck tank, and the rate of speed the truck is driven during the application. Following application of the asphalt to the roadbed, an aggregate, usually in some form of crushed rock, is spread on the asphalt before it dries and the new surface is then rolled. The distributor, whose tank holds about 2,000 gallons of liquid asphalt, can treat approximately one-quarter to one-half mile of road for each tank of asphalt, depending upon the rate of application and driving speed of the distributor. In actual operation, Allied will send the distributor to the jobsite empty. There, by means of connecting hoses, it is filled and refilled as necessary by a tank truck. When operating, distributors spray liquid asphalt on the area to be surfaced at a speed of three to four miles per hour. The asphalt distributors are always left at the jobsite until the completion of the job, at which time they are driven to the next jobsite or back to the main office.

In addition to the asphalt distributors operated by the plaintiff corporation, several other distributors, known as slurry machines, have been operated since 1967. The slurry machine consists of two small square tanks, one for liquid asphalt and one for water, behind which is mounted a large hopper for aggregate (crushed rock or similar material) and cement. The entire machine is mounted on a truck cab and chassis for mobility. At the jobsite, liquid asphalt is pumped from a tanker, transported to the jobsite for that purpose, just as for the asphalt distributors, into one of the small tanks on the machine, and water from a nearby fire hydrant or other water source is pumped into the other small tank. The aggregate or crushed rock is then placed in the hopper at the rear together with small amounts of cement, and the various ingredients are mixed within the slurry machine itself and sprayed on the road, in the proper consistency, by means of a pump and high pressure nozzles located at the rear of the truck. Because of their small capacity and the need for additions of water and aggregate, the slurry machines never transport liquid asphalt or any other material to and from the jobsite. They are used solely at the jobsite for mixing and applying the liquid asphalt and aggregate mixture to the road.

Title 26, United States Code, Section 4481(a), imposes a tax upon the use of any "highway motor vehicle" which has a taxable gross weight of more than 26,000 pounds. Title 26, United States

Code, Section 4482, defines "highway motor vehicle" as:

(a) Highway motor vehicle.—For purposes of this subchapter, the term "highway motor vehicle" means any motor vehicle which is a highway vehicle.

An additional definition is given in the Treasury Regulations (26 C.F.R. § 41.-4482(a)-1). It provides in pertinent part:

(a) In general. The term "highway motor vehicle" means any vehicle which is propelled by means of its own motor, . . . and which is of a type used for highway transportation. . . .

\* \* \* \* \* \*

(c) Highway vehicle. The term "highway motor vehicle" does not include any vehicle which, although propelled by means of its own motor, is of a type not used for highway transportation, that is, of a type designed and manufactured for a purpose other than highway transportation. For example, vehicles such as earth movers, trench diggers, and bulldozers, which are designed and manufactured as self-propelled units for "off-the-road" operations, are not highway motor vehicles for purposes of the regulations in this part. Neither are such motorized vehicles as road graders or rollers, which are designed and manufactured for construction or maintenance of roads, considered to be highway motor vehicles. . . .

The Treasury Regulations define a highway vehicle according to the use to which that vehicle is put. Based on the record in this case, these vehicles were not used for transportation but for maintenance and repair of highways. Except for actual repair or construction of the road surfaces, the machines use the highway only to travel to and from the jobsite. Further, although they resemble trucks, they are almost never used for hauling. In fact, they almost always proceed to the jobsites empty and are loaded there with the materials necessary for road construction.

New York State has not imposed the usual truck registration on them. Rather than subjecting them to the New York State Highway Use Tax,[1] the New York Tax Law creates a special exemption for road building machines.[2] Under the New York Vehicle and Traffic Law, these vehicles are registered as road building machines and pay an annual fee of $2.00.[2a]

In a similar case, Rossi v. United States, 220 F.Supp. 694 (D.Me.1963), Judge Gignoux's examination of the legislative history of the statute involved here led him to conclude that Congress intended to tax vehicles used for highway transportation, but not vehicles used for highway construction. That case notes that the statute was designed to finance new highway construction by taxing those vehicles which give roads the hardest use. The limited annual mileage[3] which these vehicles attain at slow speeds and their use, which was almost entirely for road construction, compel this court to conclude that they were not the type of vehicles which Congress intended should be subject to the tax. See Stafford Well Service, Inc. v. United States, 340 F.Supp. 657 (D.Wyo. 1972).

Because of all these considerations, neither the asphalt distributors nor the slurry machines are "highway motor vehicles" within the meaning of Title 26, United States Code, Section 4482. Thus, for these vehicles, Allied should not be subject to the tax imposed by Title 26, United States Code, Section 4481(a).

The exact amount of the refund due, including interest, shall be recomputed,

---

1. New York Tax Law § 503, McKinney's Consol.Laws, c. 60.

2. *Id.* § 501(2).

2a. New York Vehicle and Traffic Law § 401, McKinney's Consol.Laws, c. 71.

3. The average annual mileage of the asphalt distributors and slurry machines is about 4,000 to 6,000 miles.

by agreement between the parties. The plaintiff shall then present a proposed judgment to the court, upon notice to the defendant. The judgment shall be presented on or before March 23, 1973.

So ordered.